*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JOSEPH DANIEL VELEZ, JR., by
Guardian/Conservator SUSAN MOORE,

        Plaintiff-Appellant,

v

RICHARD SHAFER, KAREN SHAFER, R.
SHAFER BUILDERS, REVOCABLE LIVING
TRUST AGREEMENT DATED 12/14/89, by
trustees RICHARD N. SHAFER and KAREN J.
SHAFER,

        Defendants-Appellees,

and

HENSLEY MANUFACTURING, INC.,

        Defendant.

UNPUBLISHED
January 30, 2020

No. 345101
Macomb Circuit Court
LC No. 2017-002389-NO

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

SAWYER, J. (*concurring in part and dissenting in part*).

While I agree with the majority in affirming the trial court's grant of summary disposition on the issue of common work area and in denying leave to amend the complaint to add a claim of active negligence, I respectfully dissent from the majority's conclusion that the trial court erred in granting summary disposition on the premises liability claim.

Initially, the majority declares it "highly relevant whether Gill used appropriate safety measures during the prior jobs for defendants and what defendants knew of those measures." *Ante, slip op* at 6. But the majority then acknowledges that "the record is not as developed on those matters as one would hope." *Id*.

-1-

The majority argues that a reasonable juror could conclude that defendants had reason to know that Gill would not take appropriate safety precautions from their reaction, or lack of reaction, in a meeting after the accident. The majority refers to a meeting between representatives of defendants and Gill shortly after the accident. The majority states that "there was no indication that the Shafers were surprised to learn that Gill failed to take required safety precautions." *Ante, slip op* at 7. According to the majority, a "reasonable inference is that defendants knew or had reason to know that Gill was not using fall protection." *Id.* This is quite a quantum leap of logic, piling inference upon supposition upon speculation. We have no way of knowing why the Shafers reacted, or did not react, as they did. Perhaps they are merely the consummate professionals who keep their emotions in check during a business meeting. I do not know. But, more to the point, neither does the majority nor would a jury.

If this were not enough speculation, the majority ventures even further and offers the suggestion that Gill was paid substantially less that an "established" roofing contractor[1] and that this "indicates that defendants knew that Gill had less costs and requirements than other roofers, such as a safety program, and was therefore more likely to forego the time and expense required to implement fall protection."[2] *Id.* Not only is this yet another quantum leap of logic, the majority also fails to point to any requirement that a commercial roofing contractor be licensed.[3] But even assuming that a commercial roofing contractor must be licensed and that the roofing contractor, Gill, lacked such a license, the majority fails to support its syllogism that it provides a conclusion as to the landowner knowing the likelihood of appropriate safety practices being met. The majority simply points to no evidence to establish exactly what defendants knew regarding how Gill was able to charge less than other contractors. Indeed, the majority again acknowledges that "the record is silent regarding [Gill's] use of safety precautions for those (prior) jobs." *Id.* at 8. If the record is silent as to what prior safety precautions were, or were not, used, then it must also be silent as to defendant's knowledge of those prior precautions, or lack thereof.

Ultimately, the majority's analysis is an ill-fated effort to distinguish this case from *Perkoviq v Delcor Home-Lake Shore Pointe, Ltd*, 466 Mich 11; 643 NW2d 212 (2012). In that case, the plaintiff was employed by a subcontractor and was working on the roof of a new house that was under construction. The plaintiff brought a claim for premises liability against the defendant, who was both landowner and general contractor, after the plaintiff fell off the roof and suffered serious injuries. The plaintiff was working as a painter and had been instructed to paint the upper level exterior of the house. *Id*. at 12-13. His particular job that November day was to climb up onto the roofs of three homes and paint the upper levels of their exteriors. *Id*. at

---

[1] The majority defines "established" as being licensed and insured roofers." *Id.* at 8.

[2] The majority overlooks the fact that plaintiff's decedent <u>was</u> the fall protection. His job was to be the so-called "holler man." That is, it was his responsibility to keep an eye on the workers and to warn them when they got too close to the edge.

[3] A residential builder must be licensed. MCL 339.601(6). But I am unaware of any requirement that a commercial roofer must be licensed.

He was working on the sloped roof of one of those homes when he slipped on ice and fell approximately 20 feet to the ground below. *Id*. The *Perkoviq* Court held that summary disposition was warranted in favor of the defendant because the plaintiff presented no evidence that the condition of the roof, although open and obvious, was "unreasonably dangerous." *Id*. at 19-20. The Court also found that slippery conditions encountered by construction workers as a necessary part of their work did not constitute an effectively unavoidable hazard, because the open and obvious danger could have been avoided through the use of precautions by the workers. *Id*.

Here, Velez was working on a flat, dry roof on a summer day and fell 20 feet. Velez was an experienced roofer and was in fact acting as the roofing crew's "holler man" that day, meaning he was "to let the two people that [were] working on the edge [of the roof] know where they're at;" his only job was to act as a human safety system for the other two crew members who were installing flashing. Similar to *Perkoviq*, I conclude that summary disposition is warranted in favor of defendants because plaintiff has presented no evidence that the condition of the flat, dry roof, although open and obvious, was "unreasonably dangerous." *Perkoviq*, at 19-20.

Ultimately, I find the majority's arguments to be irrelevant to the analysis. Contrary to plaintiff's assertions, the record establishes that Gill had worked with defendants in the past and had completed roofing jobs satisfactorily. Plaintiff has not established that the risk of harm was foreseeable under the circumstances present in this case because the bottom line is that the open and obvious danger could have been avoided through the use of precautions by Velez. *Perkoviq*, at 19-20. For these reasons, the trial court properly granted summary disposition to defendants on plaintiff's premises liability claim.

I would affirm.


/s/ David H. Sawyer